## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| NATALIE HICKSON on behalf of the | § | |
| Estate of Malcom Loren Hickson, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:18-CV-2747-B (BH) |
| | § | |
| CITY OF CARROLLTON, et al., | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendants City of Carrollton and Caleb West's Partial Motion to Dismiss Plaintiffs' First Amended Complaint and Brief*, filed December 20, 2018 (doc. 18). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

Natalie Hickson and Lapresha Roquel Stanley, on behalf of herself and her minor son, and as the personal representative of the Estate of Malcom Hickson (Plaintiffs), sue the City of Carrollton (the City) and Carrollton Police Department (CPD) Officer Caleb West (Officer) in his official and individual capacities (collectively, Defendants) under 42 U.S.C. § 1983 for violations of Malcom Loren Hickson's (Hickson) Fourth Amendment rights; they also assert state law survival and wrongful death claims. (doc. 13 at 1-3, 12-13.)[2] They seek actual damages, exemplary damages, pre-judgment and post-judgment interest, court costs, and attorney's fees. (*Id*. at 14-15.)

Plaintiffs allege that on October 26, 2016, Hickson and his girlfriend were in a room at the InnTown Suites Extended Stay Residences in Carrollton, Texas. (doc. 13 at 4.) Hickson's girlfriend

---

[1] By *Standing Order of Reference* dated October 18, 2018 (doc. 5), this case was referred for full case management.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

left the room to retrieve a backpack from his vehicle, and she was immediately detained by CPD officers and placed in a CPD vehicle.  (*Id*.)  Hickson was unaware that "[t]here were multiple CPD officers and CPD vehicles" waiting outside "armed with rifles, handguns, and other weapons and restraints," and the officers "did not attempt to breach the door of the unit after his girlfriend's exit, rather; they waited for Hickson's departure."  (*Id*.)  After his girlfriend did not return, Hickson "exited the unit and made his way to the parking lot of the InnTown Suites building," where he saw "multiple armed CPD officers with weapons drawn and pointed at [him] . . . ."  (*Id*.)  Hickson raised his hands in the air and surrendered without making "any furtive movements . . . ."  (*Id*. at 5.)  While his hands were in the air, clearly visible to Officer and the other CPD officers on the scene, he "was unexpectedly and without legal justification, shot by [Officer]."  (*Id*.)  None of the CPD officers on the scene attempted to detain or restrain Hickson, or to use non-lethal force to subdue him.  (*Id*.)  Hickson was transported to the hospital but pronounced dead approximately 30 minutes after the shooting.  (*Id*.)

Plaintiffs allege that "Hickson did not pose a threat of harm to CPD officers," and that the officers "could have lawfully detained [him] using restraints or other non-lethal force."  (*Id*.)  They further allege that it was unnecessary and unreasonable to use lethal force given the circumstances because "Hickson was surrounded by multiple CPD officers with weapons drawn and [he] posed no immediate danger to [any of them]."  (*Id*.)  They assert that the City, through the CPD, failed to provide Officer adequate training in the use of deadly force, in proper arrest and confrontation techniques, and in appropriate methods and techniques to control these types of situations, and that it "knew or should have known that" Officer's training was inadequate.  (*Id*. at 5-6.)  They contend that Officer's "unlawful and unwarranted acts, lack of training and the official customs of the [City

and the] CPD caused Hickson's wrongful death." (*Id*. at 6.)  They further contend that they have "sustained substantial damages and pecuniary loss" as a result of Defendants' conduct." (*Id*.)  They claim that the City, through the CPD, "has not implemented policies and procedures to aggressively curtai[l] certain death and/or injuries as a result of the improper use of deadly force and have not disciplined officers involved in the same." (*Id*. at 7.)

## II. ANALYSIS

Defendants move to dismiss Plaintiffs' federal claims against the City and Officer in his official capacity, all of their state law claims, their claim for punitive damages against the City, and their joint and several liability claims under Rule 12(b)(6).  (doc. 18 at 2, 8-9.)[3]

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at

---

[3]Defendants did not move to dismiss Plaintiffs' Fourth Amendment and punitive damages claims against Officer in his individual capacity.  (*See* doc. 18 at 2, 8-9.)

555.  In short, a complaint fails to state a claim upon which relief may be granted when it fails to

plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570 (emphasis

added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged. The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully. Where
> a complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across the

line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570;

*accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense").

## A.    <u>Municipal Liability</u>

Defendants argue that Plaintiffs' federal claims against the City should be dismissed because

they "have failed to adequately plead a cause of action for municipal liability under 42 U.S.C. §

1983."  (doc. 18 at 15-22.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of

federal statutes, as well as of constitutional norms." *Id*.  To state a claim, a plaintiff must allege facts

that show (1) he has been deprived of a right secured by the Constitution and the laws of the United

States and (2) the deprivation occurred under color of state law.  *See Flagg Bros., Inc. v. Brooks*, 436

U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

4

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious

5

consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579–80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found insufficient an allegation that "[the officer] was acting in compliance with the municipality's customs, practices or procedures." *Spiller*, 130 F.3d at 167. It has also found that a single incident is not enough to infer an official policy or custom. *See World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11-CV-3099-B-BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail.").

1.       **Failure to Train, Supervise, or Discipline**[4]

Defendants argue that Plaintiffs' claims against the City for failure to train and failure to

supervise or discipline should be dismissed because they "do not allege with specificity how the

City's training was defective, have failed to allege facts sufficient to establish that the City was

deliberately indifferent in adopting any training policies, and have failed to allege facts sufficient

to support their contention that an inadequate training policy of the City directly caused a

Constitutional violation." (doc. 18 at 18.) They also contend that Plaintiffs have offered no factual

allegations to support their claims for failure to supervise or discipline. (*Id*. at 21-22.)

"The failure to train can amount to a policy if there is deliberate indifference to an obvious

need for training where citizens are likely to lose their constitutional rights on account of novices

in law enforcement." *Peterson*, 588 F.3d at 849 (citing *Brown v. Bryan Co.*, 219 F.3d 450, 458 (5th

Cir. 2000), *cert. denied*, 131 S. Ct. 66 (2010)). In the Fifth Circuit, "to hold a municipality liable

for failure to train an officer, it must have been obvious that 'the highly predictable consequence of

not training' its officers was that they 'would apply force in such a way that the Fourth Amendment

rights of [citizens] were at risk.'" *Id*. (quoting *Brown*, 219 F.3d at 461). "The failure to train must

reflect a 'deliberate' or 'conscious' choice by a municipality." *World Wide St. Preachers*

*Fellowship*, 591 F.3d at 756 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)) (internal

quotation marks omitted).[5]

---

[4] Although Plaintiffs assert claims for failure to train and failure to supervise or discipline separately (doc. 13 at 9-11), the elements required to prove municipal liability on a failure to supervise or discipline theory are the same as those required under a failure to train theory. *E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017) (citing cases). These claims are therefore considered together.

[5] There is an "extremely narrow" single incident exception in the context of failure-to-train claims. *Hobart v. Estrada*, 582 F. App'x 348, 358 (5th Cir. 2014). Under that exception, "§ 1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations" in "extreme

Here, Plaintiffs allege that the City "failed to adequately train its officers on how to deal with individuals while executing a warrant and the subsequent use of deadly force," and that the City "failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal . . . ." (doc. 13 at 9-11.)  The City's failures allegedly reflect "a deliberate indifference" and "reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens" by the City's policymakers, which "made the violation of Hickson's constitutional rights, including his death, a reasonable probability." (*Id*. at 10.)  They claim that the City, under the direction of its policymakers, "developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing with individuals during the execution of a warrant," and that CPD's training was "designed and implemented" by the City's policymakers. (*Id*.)  Officer was "acting under color of law and . . . pursuant to customs, practices and policies of the City," according to Plaintiffs, and his actions resulted from or were within the scope of the 'wrongful and reckless customs, policies, practices and/or procedures for which the [C]ity . . . knew or should have known but never provided the requisite and proper training." (*Id*. at 9-10.)  They conclude that the City's "failure to properly train and discipline its deputies was the proximate cause of the violations of Hickson's constitutional

---

circumstances." *Brown*, 219 F.3d at 459; *Khansari v. City of Houston*, No. H-13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (citing *Brown*, 219 F.3d at 452–48).  To show liability, "a plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Sanders–Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010).  To the extent Plaintiffs rely on this exception based on their allegations that Hickson's death was "a direct consequence of [the City's] deliberate decisions" and that his death would "in all reasonable probability would occur," they do not allege any facts in support of their conclusory allegations.  (*See* doc. 13 at 10.)  Additionally, the exception would not apply because they do not claim that Officer "was provided no training whatsoever." *Pena v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018) ("Our caselaw suggests, however, that the exception is generally reserved for those cases in which the government actor was provided no training whatsoever); *see McClendon v. City of Columbia*, 258 F.3d 432, 442–43 (5th Cir. 2001), *vacated for reh'g en banc*, 285 F.3d 1078 (5th Cir. 2002), *decision on rehearing en banc*, 305 F.3d 314 (5th Cir. 2002) (noting "there is a difference between a complete failure to train . . . and a failure to train in one limited area.").

rights."  (*Id*. at 11.)

Plaintiffs' allegations focus only on Officer's actions against Hickson.  They make no allegations of similar incidents occurring in the past in support of their assertion that the City failed to adequately train, supervise, or discipline its employees in the execution of warrants or use of deadly force.  (*See* doc. 13.)  They make only conclusory allegations regarding the City's alleged failures, and their allegations do not suffice to show that it was obvious that the highly predictable consequence of the City's alleged failure to train, supervise, or discipline was that its officers "'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 849 (quoting *Brown*, 219 F.3d at 461.)  Additionally, they allege no facts in support of their assertion that the City's alleged failures reflect deliberate indifference on the part of its policymakers.  Because they make only formulaic recitations of the elements, and rely on general and conclusory allegations for their claims against the City, their allegations do not support a finding of municipal liability under the theories of failure to train, supervise, or discipline. *Twombly*, 550 U.S. at 555.[6]

### 2.    Ratification

Defendants also move to dismiss any ratification claims asserted by Plaintiffs on grounds that they have offered no factual allegations in support of their claim.  (doc. 18 at  20-22.)

The Supreme Court and Fifth Circuit have recognized that "a policy maker could 'ratify' a subordinate's illegal conduct, thus putting the force of a municipal policy behind it[.]" *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see Praprotnik*, 485 U.S. at 128 ("If the

---

[6] Because Plaintiffs have failed to sufficiently identify an official policy or custom to support their claim for municipal liability based on the theories of failure to train, supervise, or discipline, it is unnecessary to reach Defendants' additional arguments for dismissal of these claims.  (*See* doc. 18 at 18-22.)

authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final"). The ratification theory "is necessarily cabined in several ways . . . to prevent [it] from becoming a theory of *respondeat superior*," however. *Milam*, 113 F. App'x at 626–27. Under this theory, "[p]olicymakers alone can create municipal liability, and so any violation must be causally traceable to them, not just to their subordinates." *Id*. at 627.

Here, Plaintiffs only generally state that they are asserting a ratification claim. (doc. 13 at 11.) They fail to allege any facts or provide any basis to support their claim, however. (*See id*.) Accordingly, to the extent they are asserting municipal liability based on any policymaker's ratification of Officer's conduct, they also fail to state a claim. *See Reed v. Kerens Ind. Sch. Dist.*, No. 3:16-CV-1228-BH, 2017 WL 2463275, at *15 (N.D. Tex. June 6, 2017) (finding that the plaintiff's conclusory allegations were insufficient to establish municipal liability under the ratification theory); *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 871 (S.D. Tex. 2014) (determining that the plaintiffs "failed to allege facts capable of establishing a § 1983 claim that the City ratified the officers' conduct.").

**B.    Other Claims**

Defendants also move to dismiss Plaintiffs' federal claims against Officer in his official capacity, all of their state law claims against both Defendants, their claim for punitive damages against the City, and their claim for joint and several liability. (doc. 18 at 2, 14-15, 22-26.) In their response, "Plaintiffs concede to West' dismissal" and state that they "will be proceeding only against the City on the *Monell* claims. Accordingly, Plaintiffs respectfully withdraw their request for punitive damages and for joint and several liability." (doc. 25 at 5.) Plaintiffs' federal claims

against Officer in his official capacity, all of their state law claims against both Defendants, their claim for punitive damages against the City, and their claim for joint and several liability all of these claims should therefore also be dismissed.[7]

Defendants assert that Plaintiffs' response indicates that the federal claims against Officer in his individual capacity should also be dismissed.  (doc. 26 at 1.)  Defendants did not move to dismiss the individual capacity claims, however.  (doc. 18 at 2, 8-9.)  Further, Plaintiffs' response expressly lists their concessions in response to Defendants' motion, and the list does not include the individual capacity claims against Officer, so those claims remain pending.  (*See* doc. 25 at 16.)

### III. RECOMMENDATION

Defendants' motion should be **GRANTED**, and all of Plaintiffs' claims, except for their Fourth Amendment and punitive damages claims against Officer in his individual capacity, should be **DISMISSED with prejudice**.[8]

**SO RECOMMENDED** on this 17th day of July, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[7] The City seeks attorney's fees in its motion to dismiss.  (*See* docs. 18 at 27.)  In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorneys' fees and related expenses.  *See* 42 U.S.C. § 1988(b).  While a prevailing plaintiff in a § 1983 action is usually entitled to an award of fees under § 1988, "prevailing defendants cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless."  *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (citation omitted).  To the extent that the City seeks attorney's fees, it may file a post-judgment request under Federal Rule of Civil Procedure 54(d)(2) that also complies with the applicable Local Civil Rules for the Northern District of Texas.

[8] In their response, Plaintiffs "request and opportunity to replead their claims" if the Court finds a deficiency with their allegations.  (doc. 25 at 15.)  A party, however, is not entitled to remedy a pleading deficiency simply by seeking leave to amend in response to a motion to dismiss.  *Spiller*, 130 F.3d at 167.  When a party opposes a motion to dismiss on its merits while also asking for leave to amend should the Court deem dismissal proper, the party "may not avoid the implications" of his choices.  *Id.*  Moreover, Plaintiffs have not sought leave to amend in accordance with LR 15.1, and their request may be denied on this basis.  *Shabazz v. Franklin*, 380 F. Supp. 2d 793, 798 (N.D. Tex. 2005) (accepting recommendation).  Consequently, the request to amend is denied.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

12